```
                                                          ┌─────────────────────────────────┐
                                                          │ USDC SDNY                        │
                                                          │ DOCUMENT                         │
UNITED STATES DISTRICT COURT                              │ ELECTRONICALLY FILED             │
SOUTHERN DISTRICT OF NEW YORK                             │ DOC #:_____           │
----------------------------------------------------------X │ DATE FILED: 08/30/2018         │
                                                          └─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

CARLOS DAVILA, President of A New Beginning:
  for Immigrants Rights, Inc.,           :
                                      :
                        Plaintiff,  :           1:17-cv-5032-GHW
          -v-               :
                                       :         MEMORANDUM OPINION
PABLO GUTIERREZ, *et al.*,             :           AND ORDER
                      Defendants.  :
----------------------------------------------------------:

GREGORY H. WOODS, United States District Judge:

      Plaintiff Carlos Davila is the founder of A New Beginning for Immigrant's Rights, Inc. ("A New Beginning"), an immigrants' rights organization. Through A New Beginning, Davila participated in the Department of Justice's Recognition and Accreditation Program, which permitted him to represent individuals in immigration proceedings as a non-attorney. In 2017, several news outlets reported negative stories about A New Beginning and Davila, and U.S. Representative Nydia Velázquez responded by committing that she would revoke Davila's accreditation through the Recognition and Accreditation Program. Later, Davila's accreditation was revoked because the Department of Justice learned that he had been convicted of first-degree manslaughter in 1988.

      Davila seeks to hold the United States and Representative Velázquez (collectively, the "Federal Defendants") liable for injuries that he allegedly suffered resulting from the revocation of his accreditation and from public statements made by Representative Velázquez in connection therewith. Specifically, Davila brings claims for defamation, intentional infliction of emotional distress, and invasion of privacy. Davila also asserts that his First and Fourteenth Amendment rights were violated and that the revocation of his accreditation was arbitrary and capricious in violation of the Administrative Procedure Act ("APA"). The United States, on behalf of the Federal Defendants, moves to dismiss all of the claims against the Federal Defendants pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim on which relief may be granted.  For the reasons that follow, the Federal Defendants' motion to dismiss is GRANTED.

## I.     BACKGROUND

In 2011, Davila founded A New Beginning, an organization that provided assistance to undocumented immigrants regarding "the Protection of their Rights under the Constitution of the United States, Human Rights, and their Rights under the Vienna Convention."  Compl. (ECF No. 1) ¶ 5 (capitalization in original).  Davila, through A New Beginning, participated in the Department of Justice's Recognition and Accreditation ("R&A") program from 2011 until 2017.  Second Am. Compl. (ECF No. 27) ¶¶ 10-11.  The R&A program allows non-attorneys within non-profit organizations to act as authorized representatives for individuals in immigration proceedings before the Executive Office for Immigration Review ("EOIR") and the Department of Homeland Security ("DHS").  *See* 8 C.F.R. §§ 1001, 1003, 1103, 1212, and 1292 (2016).  The Office of Legal Access Programs ("OLAP"), a component of the EOIR within the Department of Justice ("DOJ"), administers the R&A program.  *Id.*  Davila served as an accredited representative in the R&A program.  *See* Second Am. Compl. ¶ 10.

One of the services A New Beginning offered was the sale of an identification card called "ID4ICE," which provided information to immigrants on their rights under the U.S. Constitution and the Vienna Convention in case they became subject to any action by the U.S. Immigration and Customs Enforcement.  *See id.* ¶ 50.  Davila charged two hundred dollars for the card, which included a two-year membership with A New Beginning.  *Id.* ¶ 51.  Reporters from various news outlets began asking Davila a series of questions about the identification card, and then, in May 2017, ran stories identifying him as a convicted felon and accusing him of falsely promising that the identification card would protect immigrants from deportation.  *Id.* ¶¶ 49-51, 58, 63.  Davila also

alleges that Representative Nydia Velázquez, the U.S. Representative for New York's 7th Congressional District, slandered him by stating to the media that she had initiated a campaign to revoke Plaintiff's accreditation for the R&A program and called for greater oversight of the R&A program. *Id.* ¶ 71. Davila also alleges that Representative Velázquez violated his First Amendment rights and that her actions constituted intentional infliction of emotional distress, invasion of privacy, and defamation. *Id.* ¶¶ 71-74, 82-95.

On December 19, 2016, DOJ published new regulations governing the R&A program. The new regulations transferred the administration of the program from the Board of Immigration Appeals to the Office of Legal Access Programs and promulgated modified eligibility criteria and procedures for the program. *See* 8 C.F.R. §§ 1001, 1003, 1103, 1212, 1292. Among the new rules promulgated was the eligibility requirement that an individual "[have] not been found guilty of, or pleaded guilty or nolo contendere to, a serious crime, as defined in 8 C.F.R. § 1003.102(h), in any court of the United States, or of any State. . . ." 8 C.F.R. § 1292.12(a)(5). Section 1003.102(h) defines a "serious crime" as any felony and certain enumerated misdemeanors.

Davila was convicted of manslaughter in the first degree in 1988. *See* ECF No. 28-1 ("App. to Am. Compl."), at 12. Upon learning of Davila's 1988 conviction, the Office of Legal Access Program sent A New Beginning a letter, dated May 10, 2017, terminating Plaintiff's R&A program accreditation pursuant to 8 C.F.R. § 1292.12(a)(5). Second Am. Compl. ¶ 76; App. to Am. Compl., at 28. Plaintiff contends that his termination from the program violated his constitutional right to due process and was arbitrary and capricious under the APA, 5 U.S.C. § 702 *et seq. See* Second Am. Compl. ¶¶ 96-113.

On July 5, 2017, Davila filed a complaint against Representative Velázquez and several reporters and news entities, raising state law tort claims of defamation, intentional infliction of emotional distress, and invasion of privacy. *See generally* Compl. On July 21, 2017, Davila amended

his complaint, raising new constitutional and APA claims, and naming Attorney General Jeff Sessions, Acting Director of New York City District of United States Citizen and Immigration Services John Thompson, and Program Director of the Office of Legal Access Programs Steven Lang, as defendants. *See generally* Am. Compl (ECF No. 12). On August 18, 2017, Davila again amended his complaint, adding the United States as a defendant. *See generally* Second Am. Compl.

On October 27, 2017, the United States moved to dismiss Davila's complaint as against the United States, Velázquez, Sessions, Lang, and Thompson pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. ECF No. 54.

On June 25, 2018, Davila voluntarily dismissed his claims against Sessions, Thompson, and Lang pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). ECF No. 73.

## II.    LEGAL STANDARD

"A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *De Masi v. Schumer*, 608 F. Supp. 2d 516, 523-24 (S.D.N.Y. 2009) (internal quotation marks and alterations omitted) (citing *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 404 (E.D.N.Y. 2008); *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)).

Pursuant to Rule 12(b)(1), the Court must dismiss a claim when it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted); *see also Arar*, 532 F.3d at 168 ("A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint." (quoting *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007))). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the

evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). When considering a motion made pursuant to Rule 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004).

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (internal quotation marks and citation omitted). The United States, therefore, "cannot be sued at all without the consent of Congress," and "when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citations omitted).

### a.  Standard of Review Under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S.

at 679.  The court must accept all facts alleged in the complaint as true and draw all reasonable

inferences in the plaintiff's favor.  *Burch v. Pioneer Credit Recovery, Inc.*, 552 F.3d 122, 124 (2d Cir. 2008)

(per curiam).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678-79, and courts need not give

"credence to plaintiff's conclusory allegations." *Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 709

(2d Cir. 2002) (internal quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 561 ("[A]

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and formulaic recitation of the elements of a cause of action will not do.").

Because Davila is proceeding *pro se*, the Court must liberally construe the allegations in his

complaint and "interpret[ ] [them] to raise the strongest arguments that they *suggest*." *Triestman v. Fed.*

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation

omitted); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be

liberally construed . . . ." (internal quotation marks and citation omitted)); *Nielsen v. Rabin*, 746 F.3d

58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise

the strongest claims it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))).

Nevertheless, "dismissal of a *pro se* complaint is [ ] appropriate where a plaintiff has clearly failed to

meet the minimum pleading requirements."  *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y.

2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

In deciding this motion to dismiss, the Court considered documents that were either

incorporated by reference into the complaint or integral to the claims asserted therein.  *See Chambers*

*v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  For a document to be integral to a complaint,

"the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e]

documents in framing the complaint.'"  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60

(S.D.N.Y. 2010) (quoting *Chambers*, 282 F.3d at 153).

Here, the Court considered the Request for Administrative Review, *see* Section III.b, which is integral to Davila's FTCA claims, and the termination letter Davila received from OLAP, *see* Section III.f, which is integral to all of Davila's claims against the Federal Defendants to the extent they arise out of his termination from the R&A program. The Court has no trouble concluding that Davila had "actual notice" of these documents and relied on them in framing his complaint because he submitted these documents, along with others, as part of an appendix to his Amended Complaint. *See generally* App. to Am. Compl. The Court also considered the relevant section of the Federal Register in connection with Davila's APA claim. *See* 44 U.S.C. § 1507 (permitting court to take judicial notice of the Federal Register's contents); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *4 (E.D.N.Y. Aug. 29, 2013) ("Courts are permitted to take judicial notice of the contents of the Federal Register and the Code of Federal Regulations and guidance from administrative agencies.").

## III. DISCUSSION

### a. The FTCA Bars Davila's Claims Against Representative Velázquez in Her Individual Capacity

The Federal Tort Claims Act ("FTCA") "'constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances.'" *Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012) (quoting *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007)). Specifically, the FTCA waives the sovereign immunity of the United States with respect to:

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Furthermore, the FTCA immunizes federal employees from all liability for any negligent or wrongful acts or other common law tort claims committed while acting within the scope of their employment.  *See* 28 U.S.C. § 2679(b)(1); Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694, § 2(b), 102 Stat. 4563, 4564 (1988) (noting that purpose of Act is to protect federal employees form personal liability for state law torts committed within scope of their employment); *see Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005) ("The FTCA's purpose is both to allow recovery by people injured by federal employees or by agents of the Federal Government, and, at the same time, to immunize such employees and agents from liability for negligent or wrongful acts done in the scope of their employment.").  The FTCA provides the exclusive remedy for damages resulting from such claims. 28 U.S.C. § 2679(b)(1).

Pursuant to the FTCA, when an employee of the United States or a federal agency is named as a defendant in a tort action, "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant."  28 U.S.C. § 2679(d)(1).  However, "[a]n express petition for certification [by the Attorney General] is not required and a brief on behalf of the named defendants may serve as a petition to certify that they were employees acting within the scope of their employment."  *Cates v. Williams*, No. 08-cv-1529, 2009 WL 723021, at *5 (S.D.N.Y. Mar. 19, 2009) (citing *B&A Marine Co., Inc. v. Am. Foreign Shipping Co., Inc.*, 23 F.3d 709, 715-16 (2d Cir. 1994)).

"Even an Attorney General's certification that a federal employee was acting within the scope of his employment . . . does not conclusively establish as correct the substitution of the United States as defendant in place of the employee, however."  *Tomscha v. Poole*, No. 16-cv-1263,

2016 WL 7378974, at *6 (S.D.N.Y. Dec. 20, 2016) (internal quotation marks omitted) (citing *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995)). "A court must conduct a *de novo* review of a 28 U.S.C. § 2679(d) certification by the Attorney General (or his designee) if a plaintiff alleges with particularity facts relevant to the scope-of-employment issue." *Id.* (internal quotation marks and alterations omitted) (citing *United States v. Tomscha*, 150 Fed. App'x 18, 19 (2d Cir. 2005)). "The court must view the tortious conduct in the light most favorable to plaintiff, but . . . makes its own findings of fact with respect to the scope of the tortfeasor's employment and, in so doing, . . . may rely on evidence outside the pleadings." *Id.* (citing *Bello v. United States*, 93 Fed. App'x 288, 289-90 (2d Cir. 2004)).

Here, the United States has submitted its certification on behalf of Representative Velázquez through its motion, rather than by formal petition. The Court does not find that Plaintiff has pleaded with particularity facts relevant to the scope-of-employment issue such that the Court is obligated undertake a *de novo* review of the United States' certification. *See id.* (finding that *pro se* plaintiff's bald assertions that the United States acted with malice were not sufficient to require the court to undertake a *de novo* review of the United States' certifications; *Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d 749, 770 (S.D.N.Y. 2015) (declining to undertake *de novo* review of United States' certification where *pro se* plaintiff did not plead sufficient facts to suggest that defendants were acting outside the scope of their employment). Davila's contentions in his opposition regarding the scope-of-employment issue lack merit even when read in the most favorable light. Davila does not plead any facts suggesting that Representative Velázquez was acting outside the scope of her employment. Accordingly, the Court substitutes the United States for Representative Velázquez.

### b.  Davila Failed to Comply with the FTCA's Procedural Requirements

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.  This requirement is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).  The requirement also "applies equally to litigants with counsel and to those proceeding *pro se.*"  *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004). Before bringing a claim against the United States for money damages for injury or loss of property caused by an employee or agent of the United States acting within the scope of his or her employment, the plaintiff must first present the claim to the appropriate federal agency, and the agency must either deny the claim or six months need to have elapsed since the plaintiff submitted the claim.  28 U.S.C. § 2675(a).  "Claims against the United States are forever barred unless they are presented in writing to an appropriate federal agency within two years after the claim accrued." *Accolla v. U.S. Gov't*, 636 F. Supp. 2d 304, 307 (S.D.N.Y. 2009) (citing 28 U.S.C. § 2401(b)).  The plaintiff has the burden to plead compliance with the exhaustion requirement.  *Accolla*, 636 F. Supp. 2d at 307 (citing *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999)).  If the plaintiff fails to first present his claim to the appropriate agency and exhaust administrative remedies, then the plaintiff's tort claims must be dismissed for lack of subject matter jurisdiction.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (citing *McNeil*, 508 U.S. at 113);

Davila has not pleaded compliance with the exhaustion requirement in accordance with 28 U.S.C. § 2401(b).  There is no indication that Davila ever presented the tort claims at issue in this action to any federal agency.  The only item that Davila appears to have submitted in connection with this matter was a "Request for Administrative Review."  App. to Am. Compl, at 35-41.  In the request, Davila presented only a challenge to his termination under the APA and a claim for discrimination under the New York Human Rights Law.  *Id.* at 37-40.  Nowhere did Davila raise any

of the tort claims raised in this action.  Even drawing all reasonable inferences in favor of Davila, the

Court cannot conclude that the request was a presentation of the claim to the appropriate agency.

As such, Davila has failed to exhaust all administrative remedies, and his remaining tort claims must

be dismissed for lack of subject matter jurisdiction.  *Robinson*, 21 F.3d at 510.

      **c.   Davila's Claims Against the United States Are Barred by Sovereign Immunity**

      Davila's defamation and constitutional claims against the United States must be dismissed

because they are barred by sovereign immunity, and the federal government has not waived

immunity for either of those types of claims.  "The United States, as sovereign, is immune from suit

save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that

court's jurisdiction to entertain the suit."  *Liranzo*, 690 F.3d at 84 (internal quotation marks and

ellipses omitted) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).  "When an action is

brought against the United States government, compliance with the conditions under which the

government has agreed to waive sovereign immunity is necessary for subject matter jurisdiction to

exist."  *Williams v. United States*, 947 F.2d 37, 39 (2d Cir. 1991), *cert. denied,* 504 U.S. 942 (1992); *see*

*Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 474-75 (1994) (holding that sovereign immunity raises

jurisdictional bar to suit).  Even if an action against the federal government is the only possible

remedy a plaintiff may have for torts by federal employees, the action cannot be brought if the

United States has not explicitly waived sovereign immunity for such claims. *See B&A Marine Co.*, 23

F.3d 709, 714-15.

      Because the United States has not waived its sovereign immunity for defamation claims,

Davila's claim of defamation against the United States is barred.  28 U.S.C. § 2680(h) (explicitly

excluding claims of slander from waiver of immunity); *B&A Marine Co.*, 23 F.3d at 709 (holding that

the lower court properly dismissed the United States because the United States has not waived

immunity for defamation claims).  While the FTCA provides a limited waiver of sovereign immunity

for certain tort claims, Congress has not waived the United States' sovereign immunity with respect to constitutional tort claims. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable . . . for constitutional tort claims."); *Chen v. United States*, 854 F.2d 622, 625-26 (2d Cir. 1988) (holding that government's waiver of sovereign immunity under the FTCA does not extend to claims based on "direct violations of the Federal Constitution . . . or of federal statutes or regulations standing alone"). Constitutional tort claims instead must be brought against individual federal agents or employees in their individual capacities through a *Bivens* action. *See e.g.*, *Robinson*, 21 F.3d at 510. Constitutional claims not brought as a *Bivens* action against individual federal defendants must be dismissed for lack of subject matter jurisdiction. *Id.*

### d.   Davila's *Bivens* Claims Fail Because They Differ Meaningfully from Prior *Bivens* Claims and Special Factors Counsel Hesitation

The Court construes Davila's First and Fourteenth Amendment claims as *Bivens* claims. In *Bivens v. Six Unknown Named Agents*, the Supreme Court held that a plaintiff had an implied private right of action for damages against federal officers who violated the plaintiff's Fourth Amendment rights against unreasonable search and seizure when they handcuffed him inside his home without a warrant. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In the more than forty years since that decision, the Supreme Court has created a new implied right of action in only two other cases: (1) under the Fifth Amendment's due process clause for gender discrimination arising out of a Congressman's firing of his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979), and (2) under the Eighth Amendment's cruel and unusual punishment clause arising out of prison officials' failure to treat an prisoner's asthma, which resulted in the prisoner's death, *Carlson v. Green*, 446 U.S. 14 (1980).

In a recent decision, the Supreme Court underscored that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). That is because "[w]hen an issue involves a host of considerations

that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Id.* at 1857 (citing *Bush v. Lucas*, 462 U.S. 367, 380 (1983)) (internal quotation marks omitted).  In *Ziglar*, the Court re-emphasized that the creation of a new private right of action under *Bivens* must be carefully scrutinized.

As the Supreme Court has instructed, this careful scrutiny requires courts to engage in a process to determine whether it is appropriate for the Judiciary to extend a *Bivens* remedy to the claims of a particular case.  A court must first determine whether the claim "presents a new *Bivens* context." *Id.* at 1859.  A new *Bivens* context will exist "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court." *Id.*  The Court presented a non-exhaustive list of considerations to examine if a case is meaningfully different, including:

> [T]he rank of the officers involved; the constitutional right at issue;
> the generality or specificity of the official action; the extent of judicial
> guidance as to how an officer should respond to the problem or
> emergency to be confronted; the statutory or other legal mandate
> under which the officer was operating; the risk or disruptive intrusion
> by the Judiciary into the functioning of other branches; or the
> presence of potential special factors that previous *Bivens* cases did not
> consider.

*Id.* at 1860.

If the court determines that the claim at issue differs meaningfully from previous *Bivens* cases, the court must then determine if it is appropriate to imply a new private right of action to that claim.  In *Ziglar,* the Supreme Court affirmed the long-held precedent that a *Bivens* remedy "will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (citing *Carlson,* 446 U.S. at 18).

Davila's claims here are meaningfully different from prior *Bivens* cases, and special factors counsel hesitation.  Unlike *Bivens* and *Carlson*, Davila's claims did not include any form of search and seizure under the Fourth Amendment, nor did his claims include anything that could be construed to constitute cruel and unusual punishment towards Davila.  While the *Bivens* action brought in *Davis*

included a due process claim under the Fifth Amendment, that claim was substantially different than the due process claim brought by Davila under the Fourteenth Amendment.  The claim in *Davis* related to gender discrimination in the workplace, whereas the claim in the instant case relates to the revocation of a government accreditation.  In addition, none of the aforementioned scenarios in which a *Bivens* remedy has been permitted include any alleged First Amendment violations or any alleged infringement on expression or speech.  Thus, Davila's due process claims under the First and Fourteenth Amendments implicate a new context for the application of a *Bivens* remedy.

Because Davila's claim presents a new *Bivens* context, the Court must analyze whether special factors counsel hesitation in expanding *Bivens* "in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (citing *Carlson*, 446 U.S. at 18).  The Supreme Court in *Ziglar* explained that the "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.  Thus, to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1857-58.  That is, a court begins with the premise that the Judiciary should not readily extend a *Bivens* remedy to new claims, and before a court does so, it should consider a number of factors to determine whether "Congress would want the Judiciary to entertain a damages suit in a given case." *Id.*  Among those factors is whether alternative remedies exist for addressing the constitutional violations raised by the claims of a particular case.  The Supreme Court suggested that "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

In this case, Davila asserts a claim under the due process clause of the Fourteenth Amendment and the First Amendment arising out of the revocation of his accreditation under the R&A program and critical statements issued by Representative Velázquez.  As to Davila's First

Amendment claim, district courts seem to be in agreement that there is no *Bivens* remedy available for violations of the First Amendment. *See Akande v. Philips*, No. 17-cv-01243, 2018 WL 3425009, at *8 (W.D.N.Y. July 11, 2018) (collecting cases in support of the proposition that district courts nationwide agree that there is no right to bring a *Bivens* action for violations of the First Amendment); *see also Storms v. Shinseki*, No. 1:17-cv-00357, 2018 WL 3732131, at *4 (D.D.C. Aug. 6, 2018) ("Ultimately, in the complex, fraught arena of free speech, Congress is better suited than the Judiciary to determine whether a damages action should arise."). Courts have reasoned that extending a *Bivens* remedy in the First Amendment context would impose substantial costs, in both time and money, upon individual officers and employees of the Federal Government, that federal officials' own First Amendment rights could suffer, and there is already an "existing patchwork of federal statutes that provide accountability for federal officials." *Storms*, 2018 WL 3732131, at *4; *see Akande*, 2018 WL 3425009, at *8. These considerations apply with equal force in this case. As to Davila's Fourteenth Amendment claim, there is an alternative remedial structure in place. The letter that OLAP sent to Davila to inform him of A New Beginning's termination from the R&A program explicitly provided that Davila had "the opportunity to respond to this notice prior to the termination of full accreditation." App. to Am. Compl. at 29. This alone counsels hesitation in extending a *Bivens* remedy here.

Because Davila's claims present a new *Bivens* context, and special factors counsel hesitation, the Court declines to recognize a *Bivens* remedy for Davila's First and Fourteenth Amendment claims.

### e. The Revocation of Davila's Accreditation Did Not Violate the Due Process Clause of the Fourteenth Amendment

Even if Davila's due process claim could be pursued as a *Bivens* claim, there is no underlying due process violation for which a *Bivens* action against Representative Velázaquez or any other action against the United States could provide a remedy. To succeed on a procedural due process claim, a

plaintiff must establish that some government action deprived him of a protected property interest. *Morales v. New York*, 22 F. Supp. 3d 256, 276 (S.D.N.Y. 2014) ("'The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution.'" (quoting *Narumanchi v. Bd. of Trs.*, 850 F.2d 70, 72 (2d Cir. 1988))).  The "identification of the specific dictates of due process generally requires consideration of three distinct factors:  First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest . . . and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)).

When a government program grants substantial discretion to decide whether an individual is entitled to a benefit, the existence of such discretion precludes any legitimate claim of entitlement. *See Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 504-05 (2d Cir. 2001); *Sanitation & Recycling Indus. v. City of New York*, 107 F.3d 987, 995 (2d Cir. 1997).

The broad discretion afforded to those who implement the R&A program precludes any "legitimate claim of entitlement" that Davila would need for a successful due process claim.  The governing regulations of the R&A program state that "[t]he [Office of Legal Access Programs] Director, *in the exercise of discretion*, *may* approve accreditation of an eligible individual as a representative of a recognized organization. . . ."  *See* 8 C.F.R. § 1292.12(a) (emphasis added). Further, such discretion includes the Director's assessment of the eligible individual's "character and fitness to represent clients," including:

> [A]n examination of factors such as:  Criminal background; prior acts involving dishonest, fraud, deceit or misrepresentation; past history of neglecting professional, financial, or legal obligations; and current immigration status that presents an actual or perceived conflict of interest.

*See* 8 C.F.R. § 1292.12(a)(1).

Not only is "discretion" explicitly written into the program's guidelines, the ability to consider such a broad array of factors demonstrates the extent of discretion that the R&A program administrators have in granting accreditation. Because the R&A program guidelines confer such broad discretion, Davila lacks a legitimate claim of entitlement to accreditation under the R&A program. Without a legitimate claim of entitlement, Davila does not possess a property interest in his accreditation under the R&A program. Therefore, Davila fails to state a claim for a procedural due process deprivation.

### f.   Davila's Termination from the R&A Program Was Not Arbitrary and Capricious

Under the APA, a reviewing court must hold unlawful any decision or action taken by a federal agency that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the arbitrary and capricious standard, judicial review of agency action is necessarily narrow, and a reviewing court may not itself weigh the evidence or substitute its judgment for that of the agency. *Islander E. Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 150-51 (2d Cir. 2008) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983)). "Rather, in deciding whether agency action is arbitrary and capricious, a court considers 'whether the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Id.* (quoting *State Farm*, 463 U.S. at 43). In conducting its arbitrary and capricious review, a court must be satisfied from the record that "the agency . . . examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *State Farm*, 463 U.S. at 43.

Davila asserts that his termination from the program was arbitrary and capricious because 8 C.F.R. § 1003.103(c), which he cites as the basis for his termination, requires accredited representatives to disclose convictions occurring on or after August 28, 2000, while Davila was terminated on the basis of his 1988 conviction for manslaughter.  The Court understands that Davila may be confounded in part by this apparent incongruity—*i.e.* that Davila was only required to disclose convictions occurring after August 28, 2000, and yet was terminated on the basis of a conviction that occurred before that date.

Davila may have initially been required to disclose only convictions occurring after August 28, 2000 pursuant to 8 C.F.R. § 1003.103(c), but Davila's accreditation was revoked pursuant to the modified rules governing the R&A program that were published on December 19, 2016, after Davila received accreditation.  App. to Am. Compl. at 28; Defs.' Mem. at 19.  By letter dated May 10, 2017, OLAP informed Davila that it was administratively terminating his accreditation because it had learned that he was convicted of a felony, which rendered him ineligible under the program's modified rules.  The modified rules provide that "[t]he OLAP Director may administratively terminate an organization's recognition or a representative's accreditation and remove the organization or representative from the recognition and accreditation roster" if, *inter alia*, "[a]n individual fails to maintain eligibility for accreditation under § 1292.12."  8 C.F.R. § 1292.17.  Section 1292.12 provides that individuals are not eligible for accreditation under the R&A program if they have "been found guilty of, or pleaded guilty or nolo contendere to, a serious crime, as defined in 9 C.F.R. § 1003.102(h). . . ."  8 C.F.R. § 1292.12(a)(5); *see also* 8 C.F.R. § 1292.12(a)(1) (character and fitness includes but is not limited to criminal background); ECF No. 28-28.  Section 1003.102(h) defines a "serious crime" as any felony.  It is undisputed that Davila pleaded guilty to a felony— first-degree manslaughter.  Davila's confusion regarding this apparent incongruity is understandable,

but it does not make the modified rule or rulemaking process arbitrary or capricious, as discussed in more detail below.

Giving Davila's *pro se* amended complaint a liberal construction, the Court understands Davila also to be challenging the retroactive application of the applicable regulation.[1]  However, it is evident that the modified rules governing the R&A program's accreditation procedure envision retroactive application.  The provision within the modified guidelines requiring disclosure that Davila cites is limited only to events occurring after August 28, 2000, and the modified provisions in Section 1292.12(a)(5)—the section under which Davila was terminated—contain no such time limit. From the lack of such a time limit, the Court can infer that the modified guideline was intended to apply to any "serious crimes" committed by the individual at any time, even those which occurred prior to the enactment of the new guidelines in December 2016.  Because the plain language of the applicable regulation, which envisions retroactive application, allows OLAP to terminate a person who has been convicted of a felony, and OLAP terminated Davila because he was convicted of a felony, as set forth in the May 10, 2017 letter to Davila, the Court concludes that OLAP examined

---

[1] It is not clear that Davila's complaint can be construed as making the argument that DOJ promulgated the new eligibility requirements in an arbitrary and capricious manner.  To the extent that it is, the Court notes that DOJ published in the Federal Register the proposed rule on October 1, 2015.  80 Fed. Reg. 59514.  DOJ received 63 comments from various sources, including non-profit organizations, bar associations, government agencies, legal clinics, attorneys, and law students, and in response to those comments, DOJ revised the proposed rule.  81 Fed. Reg. 92346.  DOJ articulated at length the bases for its rulemaking, including stating specifically that "[r]egarding those convicted of a serious crime, this prohibition supplements the character and fitness requirement, as the Department has determined that individuals with serious crimes are not qualified to be accredited.  Unlike with attorneys permitted to appear before EOIR and DHS, the Department has the authority to decide whether nonlawyers should be accredited and permitted to provide immigration legal services in the first instance and need not be limited to pursuing discipline against them based on a serious crime after they have been accredited."  81 Fed. Reg. 92353.  In light of this notice-and-comment rulemaking and the explanations that DOJ provided for the new eligibility requirements, Davila has failed to state a claim that DOJ's promulgation of the new eligibility criteria was arbitrary or capricious.  *See generally Chauffeur's Training School v. Spellings*, 478 F.3d 117, 130 (2d Cir. 2007) ("Ordinarily, agency decisions are not found to be arbitrary and capricious unless the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." (internal citations and quotations omitted)).

the relevant data and articulated a satisfactory explanation for its action. *See State Farm*, 463 U.S. at 43. Accordingly, Davila has failed to state a claim under Section 706(2)(A) of the APA.

## IV.     State Law Claims

Having dismissed all of Davila's claims arising under federal law pursuant to 28 U.S.C. § 1331, the Court must examine whether there is any other basis for jurisdiction. The Court concludes that it cannot exercise diversity jurisdiction over this action. Although Davila asserts that there is diversity jurisdiction because "the Plaintiff and Defendants are citizens of different states," Second Am. Compl. ¶ 4, he later alleges that: (i) Plaintiff "A New Beginning for Immigrant's Rights is . . . incorporated in the state of New York with its principal place of business in the city of New York;" (ii) "at least one of the Respondent/Defendant resides in the Southern District;" (iii) Defendant Beth Fertig's business address is in New York; (iv) and Defendant WNYC 93.9 FM is a "corporation doing business in New York," *Id.* ¶¶ 12, 15, 20. Where, as here, complete diversity of citizenship does not exist, the Court cannot exercise diversity jurisdiction. *E.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 82 (2005) ("Since *Strawbridge v. Curtiss*, 3 Cranch 267 (1806), this Court has read the statutory formulation "between . . . citizens of different States," 28 U.S.C. § 1332(a)(1), to require complete diversity between all plaintiffs and all defendants.").

When a district court has original jurisdiction over claims in a case, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III." *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) (quoting 28 U.S.C. § 1367(a)); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction . . . exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" (quoting U.S. Const. art.

III, § 2))).  Claims are considered "'part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'"  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).  For purposes of this decision, the Court assumes, without deciding, that the remaining state law claims form part of the same case or controversy as the federal claims that have been dismissed by the Court.

The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary.  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)."  *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)).  Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Here, subsection (3) applies because the Court has dismissed all of the claims over which it had original jurisdiction.  Therefore, the Court may decline to exercise its discretion to decline supplemental jurisdiction over the remaining state law claims.

Even "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*, 383 U.S. at 726:  economy, convenience, fairness, and comity."  *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004).  Both the Second Circuit and the Supreme Court have "held that when the federal claims are dismissed the 'state

claims should be dismissed as well.'" *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine-judicial economy, convenience, fairness and comity-will point toward declining jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).  This is the usual case:  the Court has evaluated the values articulated in *Gibbs* in the context of this case and has concluded that they support the Court's decision to decline supplemental jurisdiction.

This conclusion is particularly compelling here, given that the case is in a very early stage.  The parties have conducted no discovery, because the Court stayed discovery pending resolution of the defendants' motions to dismiss.  *See* ECF No. 26.  This Court is, therefore, no more familiar with the facts and legal issues of this case than any court would be at the pleading stage.  The Court also notes that Plaintiff has already voluntarily dismissed and re-filed certain claims in state court of his own accord, ECF No. 73, supporting the conclusion that it would not be inconvenient for Plaintiff to file the remaining state-law claims in state court as well.  Resolution of the state-law claims in state court will avoid "needless decisions of state law" by this Court, which promotes the interests of comity and justice.  *Moran v. Tryax Realty Mgmt., Inc.*, No. 15-cv-08570, 2016 WL 3023326, at *3 (S.D.N.Y. May 23, 2016) (quoting *Gibbs*, 383 U.S. at 726).  Finally, declining to exercise supplemental jurisdiction will not be unfair.  The New York state court system, where Davila will be able to pursue his state law claims, is extremely capable.  Davila has already expressed an interest in pursuing certain of his state claims in state court, and has voluntarily dismissed certain claims with the expressed intention of re-filing them in New York Supreme Court.  ECF No. 73, at 1.

Although the exercise of supplemental jurisdiction is discretionary, an analysis of the relevant factors in the usual case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch*, 154 F.3d at 61 (citing *Cohill*, 484 U.S. at 350 n.7).  So too here.  Having considered the factors articulated in *Gibbs*, the Court declines to exercise supplemental jurisdiction over Davila's remaining state-law claims.

## V.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED.  The Clerk of the Court is directed to close the motions pending at ECF Nos. 42, 54 and to close this case.

SO ORDERED.

Dated:   August 30, 2018
       New York, New York

_____
GREGORY H. WOODS
United States District Judge